JUDGE BATTS    13 CIV 7028

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CLAUDINE WERMANN,

                        Plaintiff,

    -against-

EXCEL DENTISTRY, P.C. and
GEORGE MICHAEL MEDEIROS,

                        Defendants.
------------------------------------------------------------X

Civil Action No.:

**COMPLAINT**

**Jury Trial Demanded**

RECEIVED OCT -3 2013 U.S.D.C. S.D.N.Y. CASHIERS

       Plaintiff Claudine Wermann, by and through undersigned counsel, as and for her Complaint in this action against Excel Dentistry, P.C. ("Excel") and George Michael Medeiros ("Dr. Medeiros") (together, "Defendants"), respectfully sets forth and alleges as follows:

### PRELIMINARY STATEMENT

       1.     At Excel, Dr. Medeiros runs a dental practice where employees, and patients alike, are sexually harassed and humiliated by his sexually charged rants and inability to keep his hands off their breasts, groins and behinds.  Dr. Medeiros regularly referred to Ms. Wermann, his office manager, and other female staff as "**cunts**," "**whores**," "**hookers**," and, by way of example only, made array of other offensive comments to Ms. Wermann, such as:

> [the] reason why you left your husband was because he is gay. He's on Grindr, and he comes and fucks me

> I know you like the word 'cunt' because your boyfriend calls you that

> Are you going to go to your boyfriend's house and suck his dick?

> You like it rough!

> That's how you like to get fucked!

2. But, Dr. Medeiros did not stop there. Dr. Medeiros also regularly grabbed Ms. Wermann's breasts and her rear without her consent. He also fondled and engaged in other completely inappropriate sexual contact with patients in the office, in full view of the staff. This sexual harassment and utterly inappropriate sexual conduct created a hostile environment that continued unabated throughout Ms. Werrman's employment.

3. On August 18, 2013, after approximately four years of employment, Dr. Medeiros unlawfully fired Ms. Wermann while she was on an approved leave and directly after she had been hospitalized and treated for a serious medical condition and impairment. Dr. Medeiros claimed that she was fired for job performance, though there is no record of any performance problems during her four years as an employee. Clearly, Dr. Medeiros fired Ms. Wermann because he did not want to "deal with" an employee who had a serious medical impairment and who he perceived as having a disability.

4. Even after she was fired, Dr. Medeiros then challenged Ms. Wermann's unemployment insurance benefits in retaliation for complaining that he had discriminated against her in violation of the anti-discrimination laws and that she intended to pursue litigation.

## NATURE OF THE CLAIMS

5. Plaintiff seeks declaratory, injunctive, and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices in violation of the New York State Human Rights Law, N.Y. Executive Law §§ 290, *et seq*, the New York City Administrative Code §§ 8-101 *et seq*, and NYLL §193 *et seq.*

6. Defendants' unlawful, discriminatory and retaliatory conduct was knowing, malicious, willful and wanton and/or showed a reckless disregard for Plaintiff's protected rights

to be free from discrimination, which has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damage, severe mental anguish and emotional distress.

## PARTIES

7.  Plaintiff Claudine Wermann was employed by Excel from in or around February 2010 to August 18, 2013. At all relevant times herein, she met the definition of an "employee" under all applicable statutes. Ms. Wermann is a resident of the State of New Jersey.

8.  Defendant Excel is a domestic professional corporation with a principal place of business located at 225 West 12th Street, New York, NY 10011. At all relevant times herein, Excel met the definition of an "employer" under all relevant statutes.

9.  Defendant George Michael Medeiros is, and was at all material times herein, an employee of Excel, who resides in the City and State of New York. At all relevant times herein, he directly participated in the sexual harassment, employment decisions, and wrongful actions taken against Ms. Wermann.

## JURISDICTION AND VENUE

10. The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is diversity of citizenship between Plaintiff, a resident of the State of New Jersey, and Defendants, both of which reside or have their principal place of business in the State of New York, and this action involves a matter in controversy that exceeds the sum of $75,000, exclusive of interest and cost.

11. Venue is proper in this district pursuant to 28 U.S.C. §1391 because Defendant Excel is a corporation doing business in the State of New York and is subject to personal jurisdiction in this district, and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## FACTUAL ALLEGATIONS

**Background**

12. Excel is a dental practice providing dental services to the general public, with Dr. Medeiros as the sole dentist.

13. At all relevant times herein, Excel employed in excess of four employees at any given time. These employees included but were not limited to: Dr. Medeiros, Ms. Wermann, Loryvette Sotilaire, Ivan Vitiello, Maria Gonzalez, as well as additional replacement staff members at various times.

14. Ms. Wermann was employed by Excel as the office manager for approximately four years.

15. In this capacity, she was responsible for managing all financial affairs for the office, including all accounts payable and insurance payments.

16. In part due to Ms. Wermann's efforts, Excel's total revenue increased each year that Ms. Wermann was the office manager.

17. During her tenure at Excel, Ms. Wermann was frequently praised by Dr. Medeiros for her job performance and she was never disciplined or evaluated negatively in any way.

18. In addition to her duties as Office Manager, Dr. Medeiros entrusted Ms. Wermann with handling his personal financial transactions, giving her access to his personal bank accounts.

**Sexual Harassment Against Ms. Wermann**

19. Despite Ms. Wermann's hard work and dedication, it was routine for Dr. Medeiros to make sexually charged and offensive remarks, touch her in inappropriate places, and

4

comment about Ms. Wermann's personal life, not to mention make derogatory comments about women generally.

20. By way of example, Dr. Medeiros commented that Ms. Wermann "likes rough sex" and "that's how you like to get fucked" in response to a bruise she had on her arm.

21. Often Ms. Wermann's intimate, personal relationships were fodder for Dr. Medeiros's "jokes," which included, but were not limited to, additional comments including but not limited to: "[the] reason why you left your husband was because he is gay. He's on Grindr, and he comes and fucks me," "I know you like the word 'cunt' because your boyfriend calls you that," "Are you going to go to your boyfriend's house and suck his dick?," You like it rough!," "That's how you like to get fucked!"

22. Dr. Medeiros openly and routinely referred to Ms. Wermann and other women as "cunts," "whores," "hookers," and other offensive, derogatory, and sexist terms.

23. Dr. Medeiros also would routinely touch Ms. Wermann without her consent. This included openly groping her breasts, and grabbing her rear in full view of patients and other staff members.

24. On one occasion, Dr. Medeiros grabbed Ms. Wermann's breasts, asked to see them, and said "even if I'm gay, I still like titties."

25. Furthermore, on several occasions, Dr. Medeiros assaulted Ms. Wermann, once twisting her arm until she had tears in her eyes, and another time punching her in the arm.

26. The offensive and sexually charged environment in the office also included Dr. Medeiros' sexual interactions with patients, many of which occurred in full view of Ms. Wermann.

5

27. On multiple occasions, Dr. Medeiros kissed and fondled male patients while they were seated in the examination chair.

28. Dr. Medeiros even bragged to Ms. Wermann that he had received a "blow job" in the office from a male patient.

29. Moreover, in one of many videos that can be seen on YouTube, taken in Excel's office and featuring two male patients and Dr. Medeiros, Dr. Medeiros received a lap dance from one of his patients where he can clearly be seen groping the patient's genitals.

**Ms. Wermann's Discriminatory Termination**

30. On August 12, 2013, Ms. Wermann requested to take several days off from work. Dr. Medeiros agreed to this, telling Ms. Wermann he would "see her next Monday [August 19]."

31. In the following days, Dr. Medeiros learned from Ms. Wermann's husband that she had been hospitalized for a serious medical condition and impairment.

32. Defendants were aware that Ms. Wermann's medical condition constituted an impairment of a system of the body resulting from anatomical, physiological, genetic or a neurological condition which prevents the exercise of a normal bodily function. Moreover, Ms. Wermann had a record of such impairment and/or was regarded by Defendants as having such impairment.

33. Defendants were aware that Ms. Wermann's medical condition also constitutes an impairment of a system of the body resulting from anatomical, physiological, genetic or neurological conditions which are demonstrable by medically accepted clinical or laboratory diagnostic techniques. Moreover, Ms. Wermann had a record of such impairment and/or was regarded by Defendants as having such impairment.

34.     Defendants were aware that Ms. Wermann was suffering from a disability and/or temporary disability as defined by the New York State and City Human Rights Laws, or that she had a record of such disability and/or temporary disability, or regarded her suffering from a disability and/or temporary disability.

35.     In fact, Dr. Medieros was well aware that Ms. Wermann was being treated by a therapist and psychiatrist and stated his belief that the medication Ms. Wermann was prescribed was for "crazy" people.

36.     At all relevant times herein, Ms. Wermann was able to perform the functions of her job with or without a reasonable accommodation.

37.     On August 14, 2013, Dr. Medeiros sent Ms. Wermann a text message wherein he clearly acknowledged that Ms. Wermann was suffering from a serious medical condition and impairment.

38.     Ms. Wermann had no further contact with Dr. Medeiros until Sunday, August 18, 2013, when she received a text message from Dr. Medeiros, firing her.

39.     Dr. Medeiros' text message outrageously stated that Ms. Wermann was fired for performance-related reasons.  However, at no point during Ms. Wermann's employment did she receive any negative performance reviews, verbal or written, nor was she aware of performance evaluations being done for any staff members.  To the contrary, Ms. Wermann was frequently praised for the quality of her work.

40.     Based upon Dr. Medeiros' statement that he expected Ms. Wermann to return to work following her break, the only possible conclusion that can be drawn is that he intended for her to return, but decided to terminate Ms. Wermann after learning that she was suffering from a disability and/or temporary disability.

41.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the New York State and City Human Rights Law, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

**Retaliation Against Ms. Wermann**

42.     During her employment with Excel, Dr. Medeiros physically threatened Ms. Wermann, stating "if you ever try to take me down, I have nothing to live for, and I will fucking kill you."

43.     On September 4, 2013, Ms. Wermann's counsel sent Dr. Medeiros a letter summarizing her complaints of sexual harassment and discrimination.

44.     Thereafter, Dr. Medeiros challenged Ms. Wermann's unemployment benefits in retaliation for her complaints of sexual harassment and discrimination and in anticipation of Ms. Wermann's attempts to vindicate her rights through litigation.

**Unlawful Wage Deductions**

45.     In addition to the unlawful conduct described above, throughout Ms. Wermann's employment, Defendants made unlawful deductions from Ms. Wermann's wages.

46.     In total, the deductions constituted approximately $30,000.

47.     These deductions were made without Ms. Wermann's written and informed consent and were not deductions approved by law.

### AS AND FOR A FIRST CAUSE OF ACTION
(Gender and Disability Discrimination Under New York State Human Rights Law)

48.     Plaintiff hereby repeats, reiterates and realleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

49. Defendants have discriminated against Plaintiff on the basis of her gender and/or disability, perceived disability, and/or record of disability in violation of the New York State Human Rights Law by subjecting Plaintiff to disparate treatment based upon her gender and/or disability including, but not limited to, subjecting her to sexual harassment, a hostile work environment and terminating her employment.

50. Defendants regarded Ms. Wermann as having an impairment of a system of the body resulting from anatomical, physiological, genetic or neurological conditions, and terminated her based on this perceived disability.

51. Defendants regarded Ms. Wermann as having a physical, medical, mental or psychological impairment, and terminated her based on this perceived disability.

52. Defendants regarded Ms. Wermann as having an impairment of a system of the body resulting from anatomical, physiological, genetic or neurological conditions which are demonstrable by medically accepted clinical or laboratory diagnostic techniques, and terminated her based on this perceived disability.

53. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

54. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well

as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Retaliation in Violation of the New York State Human Rights Law)

55. Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

56. By the actions described above, among others, Defendants retaliated against Plaintiff on the basis of her protected activities by challenging her award of unemployment benefits, after she had written a letter to Defendants outlining his numerous violations of state and local law. This is in violation of the New York State Human Rights Law.

57. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled an award of monetary damages and other relief.

58. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Gender and Disability Discrimination Under New York City Human Rights Law)

59. Plaintiff hereby repeats, reiterates and realleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

60. Defendants have discriminated against Plaintiff on the basis of her gender and/or disability, perceived disability, and/or record of disability in violation of the New York City Human Rights Law by subjecting Plaintiff to disparate treatment based upon her gender and/or disability including, but not limited to, subjecting her to sexual harassment, a hostile work environment and terminating her employment.

61. Defendants regarded Ms. Wermann as having an impairment of a system of the body resulting from anatomical, physiological, genetic or neurological conditions, and terminated her based on this perceived disability.

62. Defendants regarded Ms. Wermann as having a physical, medical, mental or psychological impairment, and terminated her based on this perceived disability.

63. Defendants regarded Ms. Wermann as having an impairment of a system of the body resulting from anatomical, physiological, genetic or neurological conditions which are demonstrable by medically accepted clinical or laboratory diagnostic techniques, and terminated her based on this perceived disability.

64. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

65. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well

as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

66. Defendants' unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the New York City Human Rights Law for which Plaintiff is entitled to an award of punitive damages.

### AS AND FOR A FOURTH CAUSE OF ACTION
**(Retaliation in Violation of the New York City Human Rights Law)**

67. Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

68. By the actions described above, among others, Defendants retaliated against Plaintiff on the basis of her protected activities by challenging her award of unemployment benefits after she had written a letter to Defendants outlining his numerous violations of state and local law. This is in violation of the New York City Human Rights Law.

69. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled an award of monetary damages and other relief.

70. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

## AS AND FOR A FIFTH CAUSE OF ACTION
(Unlawful Deductions in Violation of NYLL §193)

71. Plaintiff hereby repeats, reiterates and realleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

72. The NYLL prohibits covered employers, such as Defendants, from making certain deductions from the wages of employees.

73. Defendants unlawfully deducted amounts from the wages of Plaintiff, as repayment for loans.

74. Defendants did not make said deductions in accordance with the provisions of any law or any rule or regulation issued by any governmental agency.

75. Moreover, Plaintiff did not expressly authorize Defendants in writing to make said deductions, and said deductions were not for the benefit of Plaintiff.

76. The foregoing conduct of Defendants constitutes a willful violation of the NYLL.

77. Defendants' violations of the NYLL have significantly damaged Plaintiff and entitle her to recover the total amount of the wages that were deducted from her pay, an additional amount in liquidated damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the City and State of New York;

B. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

      C.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her mental anguish and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical and mental injuries;

      D.      An award of damages to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputations and loss of career fulfillment;

      E.      An award of damages in the amount of the unlawful deductions to Plaintiff's wages by Defendants;

      F.      An award of liquidated damages;

      F.      An award of punitive damages;

      G.      An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and,

      H.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: October 3, 2013
New York, New York

                                          Respectfully submitted,

                                          THOMPSON WIGDOR LLP

                                          By: _____
                                                Douglas H. Wigdor
                                                David E. Gottlieb

                                          85 Fifth Avenue
                                          New York, NY 10003
                                          Telephone:  (212) 257-6800
                                          Facsimile:  (212) 257-6845
                                          dwigdor@thompsonwigdor.com
                                          dgottlieb@thompsonwigdor.com

                                          *Counsel for Plaintiff*